UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————— X

THE NEW YORK TIMES COMPANY,                    :
JOHN T. EWING, JR.,
                                               :

                        Plaintiffs,            :

                                               :  Case No. 19-cv-01424 (KPF)
            - against -
                                               :

UNITED STATES DEPARTMENT OF JUSTICE,           :

                        Defendant,             :

                                               :

VOLKSWAGEN AG,                                 :

                        Intervenor.            :
——————————————————————————— X


# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT
## AND IN OPPOSITION TO DEFENDANT'S AND INTERVENOR'S
## MOTIONS FOR SUMMARY JUDGMENT

David E. McCraw
Alexandra Perloff-Giles
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: 212-556-4031
Facsimile: (212) 556-4634
Email: mccraw@nytimes.com

*Counsel for Plaintiffs*

## Table of Contents

**TABLE OF AUTHORITIES** ......................................................................... iii

**PRELIMINARY STATEMENT** ..................................................................... 1

**FACTUAL BACKGROUND** .......................................................................... 3

   I.  THE VW EMISSIONS SCANDAL AND THE CRIMINAL CHARGES .......................... 3

   II.  THE MONITORSHIP AND THE MONITOR'S REPORT ................................. 4

   III.  PROCEDURAL HISTORY ............................................................... 6

**ARGUMENT** ................................................................................. 7

   I.  EXEMPTION 4 DOES NOT JUSTIFY THE WITHHOLDING  OF THE REMAINDER
     OF THE MONITOR'S REPORT ......................................................... 8

      a.  The Government and Volkswagen Have Failed to Establish that All the Redacted
         Material Is Commercial Information .............................................. 9

      b.  The Government and Volkswagen Have Failed to Show that All the Redacted
         Information Is Confidential or That It Was Provided Under a Guarantee of
         Confidentiality. ............................................................... 11

   II.  EXEMPTION 7(A) DOES NOT JUSTIFY WITHHOLDING OF THE MONITOR'S
     REPORT ............................................................................. 19

   III.  EXEMPTION 5 DOES NOT JUSTIFY THE BLANKET  WITHHOLDING OF THE
      REMAINDER OF THE REPORT ......................................................... 14

   IV.  THE GOVERNMENT HAS NOT MET ITS ADDITIONAL BURDEN  UNDER FOIA'S
      MOST RECENT AMENDMENT ......................................................... 19

   V.  AT A MININUM THIS COURT SHOULD CONDUCT AN *IN CAMERA* REVIEW .... 23

**CONCLUSION** .............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## CASES

*100Reporters v. Dep't of Justice*,
  316 F. Supp. 3d 124 (D.D.C. 2018) .......................................................................... 2, 9

*ACLU Found. v. U.S. Dep't of Justice*,
  833 F. Supp. 399 (S.D.N.Y. 1993) ............................................................................. 20

*Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*,
  44 F. Supp. 2d 295 (D.D.C. 1999) ............................................................................. 10

*Assadi v. U.S. Citizenship & Immigration Servs.*,
  2015 U.S. Dist. LEXIS 42544 (S.D.N.Y. Mar. 31, 2015) ......................................... 20

*Associated Press v. U.S. Dep't of Def.*,
  554 F.3d 274 (2d Cir. 2009) ......................................................................................... 7

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
  601 F.3d 143 (2d Cir. 2010) ......................................................................................... 7

*Brennan Ctr. for Justice v. Dep't of Justice*,
  697 F.3d 184 (2d Cir. 2012) ....................................................................................... 15

*Chi. Tribune Co. v. FAA*,
  1998 U.S. Dist. LEXIS 6832 (N.D. Ill. May 7, 1998) ................................................. 9

*Conti v. U.S. Dep't of Homeland Sec.*,
  2014 U.S. Dist. LEXIS 42544 (S.D.N.Y. Mar. 24, 2014) ......................................... 23

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ..................................................................................................... 7

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) .......................................................................................... 14, 15, 17

*Dow Jones Co. v. FERC*,
  219 F.R.D. 167 (C.D. Cal. 2002) ............................................................................... 19

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*,
  2017 WL 5972702 (N.D. Cal. Nov. 30, 2017)........................................................... 23

*Envt'l Prot. Agency v. Mink*,
  410 U.S. 73 (1973) ..................................................................................................... 18

*Florez v. CIA*,
  829 F.3d 178 (2d Cir. 2016)......................................................................................... 9

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) ....................................................................................... 2, 8, 22

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
  739 F. Supp. 2d 515 (S.D.N.Y. 2010)................................................................... 16, 17

*Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*,
  750 F.2d 1394 (7th Cir. 1984)..................................................................................... 22

*Grand Central P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999).................................................................... 15, 18
*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999)................................................................ 7, 23, 24
*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
    929 F.2d 81 (2d Cir. 1991)...................................................................... 18, 24
*Intellectual Prop. Watch v. U.S. Trade Rep.*,
    134 F. Supp. 3d 726 (S.D.N.Y. 2015) ........................................ 9, 16, 17, 18
*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
    2010 U.S. Dist. LEXIS 19510 (S.D.N.Y. Mar. 2, 2010) ............................ 13
*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
    375 F. Supp. 3d 93 (D.D.C. 2019) .......................................... 21, 22, 23
*Kansas v. Dep't of Def.*,
    2018 U.S. Dist. LEXIS 45951 (D. Kan. Mar. 21, 2018).............................. 18
*Lead Indus. Ass'n v. OSHA*,
    610 F.2d 70 (2d Cir. 1979) ...................................................................... 16, 17
*Lion Raisins, Inc. v. USDA*,
    354 F.3d 1072 (9th Cir. 2004).................................................................... 19
*Local 3, Int'l Bhd. of Elec. Workers v. NLRB*,
    845 F.2d 1177 (2d Cir. 1988)...................................................................... 18
*Lucaj v. FBI*,
    852 F.3d 541 (6th Cir. 2017)...................................................................... 16
*Maydak v. Dep't of Justice*,
    254 F. Supp. 2d 23 (D.D.C. 2003) ............................................................ 11
*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*,
    566 F.2d 242 (1977).................................................................................... 8
*NRDC v. EPA*,
    2019 U.S. Dist. LEXIS 124353 (S.D.N.Y. July 25, 2019)............................ 21
*N.Y. Pub. Interest Research Grp. v. EPA*,
    249 F. Supp. 2d 327 (S.D.N.Y. 2003).................................................... 9, 10
*N.Y. Times Co. v. U.S. Dep't of Justice*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ........................................................ 6
*N.Y. Times Co. v. U.S. Dep't of Justice*,
    752 F.3d 123 (2d Cir. 2014)........................................................................ 15
*Nat'l Council of La Raza v. Dep't of Justice*,
    411 F.3d 350 (2d Cir. 2005)........................................................................ 7
*Nat'l Parks & Conservation Ass'n v. Morton*,
    498 F.2d 765 (D.C. Cir. 1974).................................................................... 22
*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975).............................................................................. 14, 15

*Pub. Citizen Health Res. Grp. v. Food & Drug Admin.*,
  704 F.2d 1280 (1983) ............................................................................................. 9
*Rojas v. FAA*,
  927 F.3d 1046 (9th Cir. 2019) ............................................................................... 16
*Rosenberg v. U.S. Dep't of Def.*,
  342 F. Supp. 3d 62 (D.D.C. 2018) ........................................................... 21, 22, 23
*Scheer v. U.S. Dep't of Justice*,
  35 F. Supp. 2d 9 (D.D.C. 1999) ....................................................................... 19, 20
*SEC v. TheStreet.com*,
  273 F.3d 222 (2d Cir. 2001) ................................................................................... 13
*Seife v. U.S. Dep't of State*,
  298 F. Supp. 3d 592 (S.D.N.Y. 2018) ................................................................... 20
*Tarzia v. Clinton*,
  2012 U.S. Dist. LEXIS 12971 (S.D.N.Y. Jan. 30, 2012) ...................................... 24
*The Shinnecock Indian Nation v. Kempthorne*,
  652 F. Supp. 2d 345 (E.D.N.Y. 2009) ................................................................... 24
*Tigue v. U.S. Dep't of Justice*,
  312 F.3d 70 (2d Cir. 2002) ..................................................................................... 16
*U.S. Dep't of State v. Ray*,
  502 U.S. 164 (1991) ................................................................................................. 7
*Welby, Brady & Greenblatt, LLP v. U.S. Dep't of Health & Human Servs.*,
  2016 U.S. Dist. LEXIS 56605 (S.D.N.Y. Apr. 27, 2016) ..................................... 16
*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ....................................................................................... 7
*Wood v. FBI*,
  432 F.3d 78 (2d Cir. 2005) ....................................................................................... 7

## STATUTES

5 U.S.C. § 552 ....................................................................................................... *passim*

## OTHER AUTHORITIES

*Former CEO of Volkswagen AG Charged with Conspiracy and Wire Fraud in Diesel Emissions
  Scandal*, DOJ (May 3, 2018) ................................................................................... 1
*Independent Monitor at Volkswagon Calls for Internal Culture Change*, Automotive News (July
  2, 2018) ................................................................................................................... 18
Jack Ewing & Hiroko Tabuchi, *Volkswagen Set to Plead Guilty and to Pay U.S. $4.3 Billion in
  Deal*, N.Y. Times (Jan. 10, 2017) ........................................................................... 4
Jack Ewing, *VW Executives and Ex-C.E.O. Are Charged With Market Manipulation*, N.Y. Times
  (Sept. 24, 2019) ....................................................................................................... 4

Paul A. Eisenstein, *Volkswagen Slapped With Largest Ever Fine for Automakers*, NBC News (Apr. 21, 2017) ............................................................................................... 4

Stefan Menzel & Martin Murphy, *US Monitor: VW Had Corrupt Culture, Flawed Leadership*, Handelsblatt (Dec. 26, 2017) .................................................................. 17

*Volkswagen AG Pleads Guilty in Connection with Conspiracy to Cheat U.S. Emissions Tests*, DOJ (Mar. 10, 2017) ........................................................................... 4

Plaintiffs The New York Times Company and John T. Ewing, Jr. (together, "The Times") respectfully submit this memorandum of law in opposition to the motions for summary judgment by Defendant U.S. Department of Justice ("Justice Department" or "DOJ") and by Intervenor Volkswagen AG ("VW" or "the Company") and in support of The Times's cross-motion for summary judgment on its complaint brought under the Freedom of Information Act ("FOIA").

## PRELIMINARY STATEMENT

DOJ called the Volkswagen emissions scandal "unprecedented." *Former CEO of Volkswagen AG Charged with Conspiracy and Wire Fraud in Diesel Emissions Scandal*, DOJ (May 3, 2018), https://bit.ly/34TzYoa. In 2018, VW pleaded guilty to charges including conspiracy to defraud the United States and to commit wire fraud and entered into a Plea Agreement. Pursuant to that Plea Agreement, an independent monitor, appointed to assess and oversee compliance with the Agreement, released his first report in March 2018 ("Monitor's Report" or "Report"). But that Report remains largely secret, preventing the American public from assessing whether VW has indeed left its cheating past behind.

Both the Government and VW maintain that confidentiality of the Monitor's Report is a necessary prerequisite for VW to truthfully and forthrightly provide information to the monitor. That suggestion is both disturbing—given VW's history of obstructing justice and conspiring to defraud the United States—and illogical—given the criminal penalties VW faces for providing "false" or "incomplete" information. VW is bound by the terms of the Plea Agreement to "cooperate fully with the Monitor," "provide the Monitor with access to all information, documents, records, facilities, and employees" within the scope of the Monitor's mandate, and "truthfully disclose" any fraudulent conduct to law enforcement agencies. Thus, it is the plain terms of the Plea Agreement itself—not VW's baseless "belie[f] that potentially sensitive

1

information will . . . remain confidential," VW Br. at 2 (citing *100Reporters LLC v. U.S. Dep't of Justice*, 316 F. Supp. 3d 124, 157 (D.D.C. 2018))—that ensures the Monitor's access to comprehensive, truthful information.[1]

Making light of FOIA's presumption of openness and access, the Government and VW maintain that the Report is categorically exempt from disclosure under FOIA Exemptions 4, 5, and 7(A). FOIA Exemption 4 protects "commercial or financial information [that] is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). But the government has not met its burden of showing that the withheld materials are "commercial or financial information" or that VW reasonably relied on any assurance of confidentiality. By the Government's own account, the Report focuses on recommendations for remediating VW's culture, not on commercial operations or the income-producing aspects of the business. Moreover, under the terms of the Plea Agreement, there is no real assurance of secrecy: DOJ retained the absolute discretion to make the Report public.

The Monitor's Report also is not protected by Exemption 5's deliberative process privilege. The Report is neither predecisional nor deliberative—not only because it contains

---

[1] "VW Br." refers to the Memorandum of Law in Support of Volkswagen's Motion for Summary Judgment (Dkt. 30). "Gov't Br." refers to the Memorandum of Law in Support of the Department of Justice's Motion for Summary Judgment (Dkt. 27). "Compl." refers to the Complaint filed by Plaintiffs (Dkt. 1). "Plea Agreement" refers to the Rule 11 Plea Agreement and its accompanying exhibits, all attached as Exhibit 1 to the Declaration of Jennifer L. Blackwell in Support of Defendant Department of Justice's Motion for Summary Judgment (Dkt. 28). "Blackwell Decl." refers to the aforementioned Declaration of Jennifer L. Blackwell (Dkt. 28). "Han Decl." refers to the Declaration of Suhana S. Han in Support of Volkswagen AG's Motion for Summary Judgment (Dkt. 32). "Meiers Decl." refers to the Declaration of Thomas Meiers, attached as Exhibit F to the aforementioned Declaration of Suhana S. Han (Dkt. 32). "Sullivan Decl." refers to the Declaration of Michael A. Sullivan in Support of the Government's Motion for Summary Judgment (Dkt. 29). "McCraw Decl." refers to the Declaration of David E. McCraw in Support of Plaintiffs' Motion for Summary Judgment.

factual "findings" and "observations" not subject to the privilege, but also because the recommendations in the Report are aimed at VW rather than at the agency and do not have as their purpose to assist agency decisionmakers in formulating government policy. More importantly, the Report is not an intra-agency or inter-agency memorandum because the Monitor is not functionally equivalent to an agency employee.

The Government's reliance on FOIA Exemption 7(A) fares no better. The burden rests on the Government to make a logical and plausible showing that disclosure would interfere with a law enforcement proceeding. In light of the Plea Agreement's truthful disclosure mandate, there is no evidence that disclosure would reasonably interfere with any law enforcement proceeding.

Finally, the Government has not shown compliance with the FOIA Improvement Act of 2016, which requires the Government to show that disclosure would foreseeably harm an interest protected by the exemptions invoked.

Accordingly, consistent with FOIA's mandate, the Government must release the Monitor's Report (with limited redactions of personally identifying information as needed). At a minimum, The Times respectfully requests that the Court review the documents *in camera* to ensure that withholdings are no greater than permitted under FOIA.

## FACTUAL BACKGROUND

## I.   THE VW EMISSIONS SCANDAL AND THE CRIMINAL CHARGES

Beginning in 2013, scientists at West Virginia University learned that Volkswagen had installed "defeat device" software on its "clean diesel" vehicles. (Plea Agreement, Exh. 2-21–2-22, Dkt. 28.) The software was designed to recognize whether a vehicle was undergoing emissions testing on a dynamometer or was being driven on the road under normal conditions,

and thus to evade emissions requirements. (*Id.* at 2-23–2-27). Subsequent investigations of the fraud scheme revealed that Volkswagen had sold 11 million such vehicles worldwide, including 600,000 in the United States. *See, e.g.*, Jack Ewing & Hiroko Tabuchi, *Volkswagen Set to Plead Guilty and to Pay U.S. $4.3 Billion in Deal*, N.Y. Times (Jan. 10, 2017), https://nyti.ms/2X5I9L9. Several executives were criminally charged in the United States or in Germany, while others were forced to resign. *See* Paul A. Eisenstein, *Volkswagen Slapped With Largest Ever Fine for Automakers*, NBC News (Apr. 21, 2017), https://nbcnews.to/2qD9los; Jack Ewing, *VW Executives and Ex-C.E.O. Are Charged With Market Manipulation*, N.Y. Times (Sept. 24, 2019), https://nyti.ms/2Ko4y1d.

On January 11, 2017, DOJ charged VW with three criminal felony counts—for conspiracy to defraud the United States, to commit wire fraud, and to violate the Clean Air Act; for obstruction of justice; and for entry of goods into the United States by false statement. (Plea Agreement 3–6.) On March 10, 2017, VW pleaded guilty and agreed to pay a $2.8 billion criminal fine. *See Volkswagen AG Pleads Guilty in Connection with Conspiracy to Cheat U.S. Emissions Tests*, DOJ (Mar. 10, 2017), https://bit.ly/2X3naZG. Judgment was entered against VW on April 21, 2017. *See* Eisenstein, *supra*. As part of the Plea Agreement, VW was placed under monitorship by an independent compliance monitor, with whom the Company is required to fully cooperate. The plea deal represented the largest criminal fine ever levied by the United States against a carmaker. *Id.*

## II.   THE MONITORSHIP AND THE MONITOR'S REPORT

The Plea Agreement imposes firm "Cooperation and Reporting Obligations" on VW, requiring that the Company "cooperate fully" with investigative authorities "in any and all

matters" relating to VW's "installation of defeat devices and false and fraudulent representations pertaining thereto." (Plea Agreement 18.) Those "Cooperation and Reporting Obligations" include (1) the obligation to "truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or attorney work product doctrine, or by applicable law and regulations, . . . about which the [government] may inquire"; (2) the obligation "to provide to the [government], upon request, any document, record or other tangible evidence about which the [government] may inquire"; (3) the obligation to "at all times provide complete, truthful, and accurate information"; (4) the obligation to "use its best efforts to make available for interviews or testimony . . . present or former officers, directors, employees, agents and consultants" of VW, with the understanding that VW "consents to any and all disclosures" of such information to other authorities in the United States as the government, in its "sole discretion, shall deem appropriate"; and (5) the obligation to promptly report to the government "any evidence or allegation of a violation of U.S. federal law by or on behalf of [VW] and relating to emissions of its vehicles, false or misleading statements made to public authorities or regulators, fraud or misrepresentations in the sale or marketing of its products, or obstruction of any pending or contemplated . . . investigation or proceeding." (Plea Agreement 18–20.)

As part of the Plea Agreement, VW also agreed to the appointment of an independent monitor, who would help ensure the implementation of an effective compliance program. VW proposed three candidates, from among whom DOJ chose Larry Thompson as the monitor. (Plea Agreement 34.) VW agreed to "cooperate fully with the Monitor," as with the Government, and to "provide the Monitor with access to all information." (Plea Agreement Exh. 3-2–Exh.3-3.) "[T]he consequences of a breach of the Plea Agreement by VW[] include possible prosecution." (Gov't Br., at 3; Plea Agreement 24.) In particular, if VW provides "deliberately false,

incomplete, or misleading information," or "fails to cooperate" with the "Cooperation and Reporting Obligations" set forth in the Agreement, VW "*shall* . . . be subject to prosecution for any federal criminal violation" of which the government is aware, including but not limited to the charges as to which VW pled guilty. (Plea Agreement 24.)

## III.    PROCEDURAL HISTORY

On December 10, 2018—several months after the monitor submitted his initial report—*New York Times* reporter Jack Ewing submitted a FOIA request to DOJ's Environment and Natural Resources Division. The request sought: (1) all reports submitted to the DOJ by the Monitor under the plea agreement in *United States v. Volkswagen*, No. 16-CR-20394 (E.D. Mich), and the Independent Compliance Auditor under *in Re Volkswagen "Clean Diesel,"* No. MDL 2672 (N.D. Cal.), and (2) all "factual evidence" (as the term is used in Volkswagen's 2017 annual report) presented to DOJ by the law firm of Jones Day, including documents related to the involvement of VW's executive board or supervisory board in the activities described in the Statement of Facts attached to the Plea Agreement. (Compl. ¶ 8, Dkt. 1). DOJ failed to make a timely determination on the request, and The Times brought this action on February 14, 2019. After The Times filed its complaint, the parties agreed to narrow the records at issue in this case to only the initial Monitor's Report. The Government voluntarily produced a limited portion of that Report to Plaintiffs on October 1, 2019. (Han Decl., Ex. B; McCraw Decl., Ex. 1.) [2]

---

[2] Like the Government, and in accordance with the practice in FOIA cases in this District, The Times has not submitted a Local Rule 56.1 statement. *See N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("[T]he general rule in this Circuit is that in FOIA actions, . . . Local Civil Rule 56.1 statements are not required."); *Ferguson v. FBI*, 1995 WL 329307, at *5–6 (S.D.N.Y. June 1, 1995). VW did submit a Local Rule 56.1 statement. Some of those statements (1) are not true (for example, contrary to the assertion in ¶ 32 that VW never "authorized the public disclosure of the . . . Report or its contents," VW did in fact consent to DOJ's redacted production); (2) are opinions rather than facts (as with the characterization in ¶

# ARGUMENT

FOIA requires that government records be made available to the public unless a statutory exemption applies. 5 U.S.C. § 552(a)(3)(A), (b)(1)–(9). "The basic purpose of FOIA reflect[s] a general philosophy of full agency disclosure." *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (alterations omitted)). In light of this purpose, "FOIA exemptions are to be construed narrowly." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009). There is a "strong presumption in favor of disclosure [that] places the burden on the agency to justify the withholding of any requested documents." *Id.* (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)); *see Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999). Failure to meet that burden requires disclosure of the requested documents. *See Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 355–56 (2d Cir. 2005).

A court reviews *de novo* an agency's decision to withhold information from the public. *See* 5 U.S.C. § 552(a)(4)(B). The agency's decision as to the applicability of a given exemption is entitled to no judicial deference. *See Bloomberg*, 601 F.3d at 147. Although courts review reasonably detailed agency affidavits with a presumption of good faith, this primarily is for determining the need for further fact-finding. *See, e.g.*, *Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005); *see also Wilner v. NSA*, 592 F.3d 60, 69, 73 (2d Cir. 2009) (presumption does not replace *de novo* review by courts).

---

33 that VW's monitorship has been "successful" due to VW's "candor and transparency"); and/or (3) are in dispute (as with the statement in ¶ 35 that disclosure "could compromise the effectiveness of [VW]'s compliance and risk management systems). In following the law in this Circuit and not submitting a Local Rule 56.1 Statement, The Times in no way concedes that VW's Rule 56.1 Statement contains undisputed statements of material fact.

The Government contends that the Monitor's Report is exempt from disclosure under Exemptions 4, 5, and 7(A).[3] "[W]hen an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *see* 5 U.S.C. § 552(b) (requiring the government to disclose "the exemption under which [each] deletion is made"). Ignoring these requirements, the Government has neither shown that the exemptions properly apply nor that they justify blanket withholding of the remaining portions of the Report. Further, the Government has not met its burden under the FOIA amendments of 2016 to identify any reasonably foreseeable harm of the kind the exemptions are designed to prevent that would result from disclosure.[4]

## I.   EXEMPTION 4 DOES NOT JUSTIFY THE WITHHOLDING OF THE REMAINDER OF THE MONITOR'S REPORT

Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). As construed by the courts, the exemption applies when the third party actually and customarily keeps the information confidential and receives a promise of confidentiality from the government. *Argus Leader Media*, 139 S. Ct. at 2366. As a result, the Government needs to establish that the redacted information is commercial, that it was kept confidential, and that it was provided to the agency in reliance on a confidentiality promise. The Government's factual

---

[3] The Government also contends that portions of the Monitor's Report are exempt from disclosure under Exemptions 6 and 7(C). The Times does not dispute that, pursuant to those exemptions, the Government may redact personally identifying information as applicable.

[4] VW's arguments largely track those made by the Government. Thus, the response set forth here addresses both VW's and the Government's argument even when, for the sake of conciseness, only one of the briefs is mentioned.

support for each of those must be sufficiently detailed to allow the Court to conclude that it is "logical and plausible" that the exemption applies. *Florez v. CIA*, 829 F.3d 178, 184–85 (2d Cir. 2016)**.** The Government falls short of establishing each of those prongs.

### a. The Government and Volkswagen Have Failed to Establish That All the Redacted Material Is Commercial Information

The withheld portions of the Monitor's Report do not plausibly contain only commercial information. Commercial information is information that has an "intrinsic commercial value," that is used in a company's "daily operations," or in which a company has a "commercial interest." *N.Y. Pub. Interest Research Grp. v. EPA*, 249 F. Supp. 2d 327, 333 (S.D.N.Y. 2003); *accord 100Reporters*, 316 F. Supp. 3d at 140 ("[I]nformation is commercial under Exemption 4 if, in and of itself, it serves a commercial function or is of a commercial nature."). It typically involves "records that reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or relate to the income-producing aspects of a business." *Intellectual Prop. Watch v. U.S. Trade Rep.*, 134 F. Supp. 3d 726, 744 (S.D.N.Y. 2015). "[N]ot every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Pub. Citizen Health Res. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (1983); *see Chi. Tribune Co. v. FAA*, 1998 U.S. Dist. LEXIS 6832, at *6 (N.D. Ill. May 7, 1998) ("The mere fact that an event occurs in connection with a commercial operation does not automatically transform documents regarding that event into commercial information.").

Despite that limiting definition, the Government does little to sort out how much of the Report is truly commercial. Instead, it simply says "the report contains commercial information." (Gov't Br. at 19.) Saying the magic word "commercial" does not make it so. *See 100Reporters*, 316 F. Supp. 3d at 139 (holding that the Government's Exemption 4 redactions to records of a

corporate monitorship were overbroad "because they cover[ed] some information that is not

commercial," notably "general descriptions of the Monitor's past and future activities"); *Animal*

*Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 303 (D.D.C. 1999)

(requiring that the agency provide a "description of the documents" sufficient for the requester

and the Court to "test the accuracy" of the claim that the information is commercial).

In fact, the Government's own description of the Report's contents undermines its claim

that "much" of the report contains confidential commercial information. According to the

Government, the Monitor's Report includes:

> Analysis root causes (including discipline, culture, development, and compliance issues
> and areas that may be addressed through recommendations; Review of . . . the company's
> governance and operating structure, role of the works council, and risk-management
> model; Discussion of the Monitor's activities during the initial review, including how the
> Monitor approached the review; Assessment and commentary on VW's disciplinary
> system; The Monitor's observations of the VW culture at the time of the initial review
> and analysis of associated remedial challenges; Recommendations regarding transitioning
> issues to remediation structures; Recommendations regarding the current compliance
> structure, including compliance officers; . . . Review of the VW Code of Conduct;
> Analysis of the whistleblower system; . . . Monitor recommendations; Monitor
> observations.

(Blackwell Decl. ¶ 26, Dkt. 28). Volkswagen offers up a similar list of contents. (Meiers Decl. ¶

11, Dkt. 32.) Based on these descriptions, the Monitor's Report appears to be focused on the

monitor's assessment of VW's culture and his recommendations for remediation, *not* on the

"commercial operations" or "income-producing aspects" of VW's business. *Intellectual Prop.*

*Watch*, 134 F. Supp. 3d at 744; *cf. N.Y. Pub. Interest Research Grp.*, 249 F. Supp. 2d at 332–34

(holding that documents containing a company's "analyses of the costs, benefits and

environmental impact" of an agency proposal, submitted to the agency in an effort "to convince

[it] to adopt [a] less expensive" plan, were not "commercial" under Exemption 4). Documents on

which the monitor's assessments and recommendations are based—for example, information

about VW's "governance and operating structure," "disciplinary system," and Code of Conduct— also appear to be distinctly non-commercial. Blackwell Decl. ¶ 26. Accordingly, the Government has not met its burden of showing, logically and plausibly, that the information withheld is commercial.

### b. *The Government and VW Have Failed to Show That All the Redacted Information Is Confidential or That It Was Provided Under a Guarantee of Confidentiality.*

It is not enough for the Government and VW to simply declare that information in the withheld parts of the Report is confidential. *See Maydak v. Dep't of Justice*, 254 F. Supp. 2d 23, 48–49 (D.D.C. 2003) (rejecting an agency's argument that a company's report, labeled on every page "proprietary and confidential," was "confidential" under Exemption 4). As an initial matter, they have not made the case that the Report has been held in confidence. VW tellingly fails to disclose how many people have read the Monitor's Report, but admits that many people, both inside and outside the Company, have access to the Report and/or to the observations and recommendations contained therein. (VW Br. at 10). According to Thomas Meiers, Chief Coordinator of the Volkswagen Group U.S. Monitorship, "the Monitor's observations and recommendations have been shared on a need-to-know basis with managers and employees," while a "limited number of other key employees and external advisors have also received copies of the report where necessary to carry out their functions." (Meiers Decl. ¶ 13.) VW is vague about the terms and conditions under which the report was shared, and says nothing at all about who those outside parties are. Moreover, under the Plea Agreement, VW is required to adopt and implement the recommendations contained in the March 2018 Monitor's Report within 150 days of receiving the Report. (Plea Agreement Exh. 3-8.) Those recommendations have now been implemented (Han Decl., Ex. J, Dkt. 32), suggesting that the substance of the recommendations

11

may now be widely known within the company. Again, the Government and VW are silent on how widely the recommendations are known within the company, and whether any public disclosure has been made of the remedial steps taken.

But there is a more glaring problem with the case made by the Government and VW: The Monitor's Report was not provided pursuant to a guarantee of confidentiality on which VW could have reasonably relied.

First, the Government has already released portions of the Monitor's Report to Plaintiffs, undermining the contention that disclosure of the Report would violate assurances of secrecy in the Plea Agreement. (McCraw Decl., Ex. 1.) In fact, the Government acknowledges that precisely the same concerns as it asserts here with respect to disclosure of the full Monitor's Report—namely, that "confidentiality [i]s critical to a successful monitorship," that "any perception that confidentiality cannot be guaranteed can interfere with the Monitor's ability to obtain and transmit critical information," and that "release of *any* portion of the Monitor Report could interfere with [the Government's] ability to effectively enforce the Plea Agreement by discouraging VW employees or third parties from communicating candidly with the Monitor"— were also present with respect to portion of the Monitor's Report released. (Blackwell Decl. ¶ 39 ("[W]e had significant concerns about the release of even this portion of the Monitor Report."), Dkt. 28). By disclosing limited portions of the Monitor's Report voluntarily, the Government has already signaled to VW and any other entities subject to monitorship that any assurances of secrecy are not absolute and may bend to the public's statutory rights under FOIA.

Second and more significant, the Plea Agreement itself makes clear that any promise of confidentiality was an empty assurance. The Government flatly told Volkswagen in writing that it

was free to release any and all information in the Report. (Plea Agreement Exh. 3-3, Dkt. 28.) Specifically:

> The reports [of the monitor] will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, or impede pending or potential government investigations and thus undermine the objectives of the Monitorship. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, . . . except to the extent that the [government law enforcement entities] determine *in their sole discretion* that disclosure would be in furtherance of the [entities'] discharge of their duties and responsibilities *or is otherwise required by law*.

(*Id.* at Exh. 3-14 (emphasis added); Blackwell Decl. ¶ 22; Sullivan Decl. ¶ 6.) Disclosure "otherwise required by law" would include in response to a valid FOIA request to which no exemption applies. And the Government's stated right to disclose the Report in its "sole discretion" belies any claim by VW that it reasonably relied on an assurance of confidentiality. The Second Circuit has made that point in reference to discovery protective orders: "The promise of protective orders that are on their face temporary or limited may not justify reliance by the parties." *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001); *see Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 2010 U.S. Dist. LEXIS 19510, at *21 (S.D.N.Y. Mar. 2, 2010) ("[T]he procedures for disclosing information to non-parties weigh against reasonable reliance."). Thus, VW did not receive a real promise of confidentiality and could not have justifiably relied on the conditional assurance it was given. Every time Volkswagen provided information to the Monitor for submission to the Government, it did so knowing that the information could be released over any and all objections it had to disclosure.

Third, contrary to what the Government and VW would have this Court believe, disclosure would not have any "chilling effect" on Volkswagen's "ability to . . . fulfill the Monitor's ongoing mandate." (VW Br. at 2.) It may well be true that "the Monitor's ability to perform his duties . . . depends on thorough and candid information—gathered from a broad

range of VW's employees—to evaluate VW's compliance program." (Gov't Br. at 11.) But there is *no* support for the Government's assertion that disclosure of the Monitor's Report would make VW "less willing to provide candid information to the Monitor," and "in turn, . . . impair DOJ's ability to assess VW's compliance." (*Id.*) VW already has clear obligations under the Plea Agreement to "cooperate fully" with the Monitor and government law enforcement and to provide "complete, truthful, and accurate information," and faces a risk of prosecution if it provides "false, incomplete, or misleading information" or otherwise fails to cooperate fully. (Plea Agreement 19, 24, Exh. 3-2). Any suggestion that VW would lack sufficient incentive to cooperate absent confidentiality is tantamount to asserting that criminal defendants cannot be trusted, even under penalty of prosecution, to abide by Plea Agreements—and is not a "logical and plausible" basis for withholding the Report under Exemption 4.

## II.   EXEMPTION 5 DOES NOT JUSTIFY THE BLANKET WITHHOLDING OF THE REMAINDER OF THE REPORT

The Report also cannot be withheld under Exemption 5. Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The deliberative process privilege—one of the privileges that apply through Exemption 5, *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975)—protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Sears*, 421 U.S. at 150). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance

14

'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9 (quoting *Sears*, 421 U.S. at 151). The privilege does not, however, sweep up every government document that relates in some way to an agency decision. Instead, to benefit from the protections of the privilege, the agency must establish that the document at issue is both pre-decisional and deliberative. *See Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). When disclosures are made outside the agency, the privilege is waived unless some exception applies. *See N.Y. Times Co. v. U.S. Dep't of Justice*, 752 F.3d 123, 136–37 (2d Cir. 2014).

The Monitor's Report is neither predecisional nor deliberative. Whereas a predecisional document is one "prepared in order to assist *an agency decisionmaker* in arriving at his decision," *Brennan Ctr. for Justice v. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (emphasis added), the Monitor's Report is prepared in order to assist a *private company*, VW, in improving compliance. And whereas a deliberative document is one "actually . . . related to the process by which [government] policies are formulated," *id.*, the Monitor's Report contains "detailed findings, observations, and . . . recommendations relating to the Company's global compliance systems and processes, technical development, and environmental compliance initiatives," (Meiers Decl. ¶ 11)—recommendations that VW, not the agency, is *required* to "adopt and implement" and that VW did in fact treat as final decisions to be implemented. (Plea Agreement Exh. 3-8, Dkt. 28; Han Decl., Ex. J, Dkt. 32.) Disclosure of the Monitor's Report simply has no bearing on the openness of discussions among agency employees about the formulation of any government policy. *See Klamath*, 532 U.S. at 8–9.

More importantly, however, the Monitor's Report is not an intra- or inter-agency memorandum. The Government's invocation of Exemption 5 is based on the false premise that

15

the work of a third-party monitor—who is not a governmental employee—falls within the deliberative privilege of Exemption 5 under the so-called "consultant corollary." (Gov't Br. at 15–16.) Under the consultant corollary, communications with outside consultants may be considered intra- or inter-agency communications. The consultant corollary has come under criticism and has recently been rejected by the Sixth and Ninth Circuits as "contrary to Exemption 5's text and FOIA's purpose to require broad disclosure." *Rojas v. FAA*, 927 F.3d 1046, 1055 (9th Cir. 2019); *see Lucaj v. FBI*, 852 F.3d 541, 549 (6th Cir. 2017).

The Second Circuit recognizes a very narrow consultant corollary, covering "documents submitted to the agency by . . . outside consultants to assist it in rendering an informed decision" in the context of a rule-making process. *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 83 (2d Cir. 1979); *see also Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 73, 77 (2d Cir. 2002) (observing that "agencies may require assistance from outside consultants in formulating policy" and holding that Exemption 5 applied to a report authored by a commission "established by the IRS" and "charged with assisting the IRS" in developing its policy). But courts in this Circuit have rejected attempts to broaden the consultant corollary beyond those narrow contours. *See, e.g.*, *Welby, Brady & Greenblatt, LLP v. U.S. Dep't of Health & Human Servs.*, 2016 U.S. Dist. LEXIS 56605, at *22–23 (S.D.N.Y. Apr. 27, 2016) ("declin[ing] to expand the [consultant corollary] doctrine" and holding that it does not apply to records created by an entity receiving federal funds because the entity did not "function[] as an arm" of the agency); *Intellectual Prop. Watch*, 134 F. Supp. 3d at 748–49 (holding that records from advisory committees established by the President to provide advice relevant to trade negotiations were not intra-agency memoranda because the committees "reflect[ed] the viewpoints of private industry" and were not disinterested); *cf. Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515,

16

539 (S.D.N.Y. 2010) (noting that, in contrast to the D.C. Circuit, the Second Circuit has "never endorsed" a broad interpretation of the consultant corollary).

In short, the doctrine applies only to consultants who act "enough like the agency's own personnel to justify calling their communications 'intra-agency.'" *Klamath*, 532 U.S. at 12. The "typical case[]" is when the consultant is hired by the agency as a pseudo-employee to advise on policy. *See id.* at 11. As a minimum, the consultants must act "on behalf of," "on the same team" as, and as a "pure objective proxy for the agency," and may not "represent an interest of [their] own, or the interest of any other client." *Lead Indus. Ass'n*, 610 F.2d at 83; *Fox News Network*, 739 F. Supp. 2d at 540; *Intellectual Prop. Watch*, 134 F. Supp. 3d at 748; *Klamath*, 532 U.S. at 11.

The Monitor's Report is not covered by the consultant corollary. The Monitor is not hired by the agency, but rather is selected and retained by VW. (Meiers Decl. ¶¶ 4, 7; Plea Agreement 33.) It was VW—not DOJ—that requested that the term of the monitorship be extended. (*See* Han Decl., Ex. G, Dkt. 32.) The Monitor does not have an enforcement role, and, as noted, is charged with providing recommendations to *VW* rather than to the agency. (Plea Agreement Exh. 3-6–3-9; Meiers Decl. ¶¶ 10, 13; Han Decl., Ex. J; Blackwell Decl. ¶ 25.) The Government's assertion that "some monitors would be less likely to provide complete information to DOJ" absent promises of confidentiality recognizes that monitors may have interests that diverge from those of the agency. (Blackwell Decl. ¶ 20.) Indeed, the monitor, Larry Thompson, has made clear in interviews that he views his team as allied with VW, not as analogous to law enforcement agency personnel. "I am not a prosecutor," he said. Stefan Menzel & Martin Murphy, *US Monitor: VW Had Corrupt Culture, Flawed Leadership*, Handelsblatt (Dec. 26, 2017), https://bit.ly/2CF6m1n. He further explained: "[T]he monitor and the company have a

17

shared goal. We are not adversaries to the company. We are working together to help transform the company." *Independent Monitor at Volkswagon Calls for Internal Culture Change*, Automotive News (July 2, 2018), https://bit.ly/2X0G9UA; *see also* Han Decl., Ex. G ("I look forward to continuing to work productively with the company to achieve our shared goal of making Volkswagen AG a better company."). In positioning himself as aligned with VW, in pursuit of the "shared goal" of making it "a better company" and achieving certification, Thompson acknowledges that he is not a "pure objective proxy" for the law enforcement agency, as required to trigger the consultant corollary. *See Intellectual Prop. Watch*, 134 F. Supp. 3d at 748.

Finally, even if this Court were to conclude that the Monitor's Report were an intra-agency record, the deliberative process privilege does not justify blanket withholding. Factual information in a deliberative report must be released, even if recommendations and evaluative judgments are withheld under Exemption 5. *See, e.g.*, *Envt'l Prot. Agency v. Mink*, 410 U.S. 73, 88-91 (1973) ("Exemption 5 . . . requires different treatment for materials reflecting deliberative or policymaking processes," which are exempt from disclosure, and "purely factual, investigative matters," which are not exempt); *Grand Central P'ship*, 166 F.3d at 482 ("Purely factual material not reflecting the agency's deliberative process is not protected."); *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988) (same); *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991) (same); *see also, e.g.*, *Kansas v. Dep't of Def.*, 2018 U.S. Dist. LEXIS 45951 (D. Kan. Mar. 21, 2018) ("[A]llowing an agency to claim every document with facts as deliberative could justify withholding almost anything."). Thus, the Government must disclose all reasonably segregable "purely factual material" contained in the Report.

### III.   EXEMPTION 7(A) DOES NOT JUSTIFY WITHHOLDING OF THE MONITOR'S REPORT

The Government also cannot justify withholding of the Report under Exemption 7(A), which authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

Exemption 7(A)'s purpose is to prevent the target of an investigation from eluding prosecution or prematurely obtaining information or evidence relevant to the government's case. Accordingly, Exemption 7(A) ordinarily does not apply when the target of the investigation already has access to or submitted the information in question. *See, e.g.*, *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1085 (9th Cir. 2004) (stating that, where the investigatory target "already ha[d] copies of the documents" sought, the government could not "argue that revealing the information" would harm its investigation); *Dow Jones Co. v. FERC*, 219 F.R.D. 167, 173 (C.D. Cal. 2002) (noting that agencies would have difficulty demonstrating interference with enforcement proceedings where "the subjects of the investigation . . . have copies" of the records at issue; *Scheer v. U.S. Dep't of Justice*, 35 F. Supp. 2d 9, 13–14 (D.D.C. 1999) (holding that an agency must "prove" harm to a law enforcement proceeding, and that it could not do so where the target of the investigation already had the information). Here, VW itself is the principal target of the investigation, and of course it has uninhibited access to the full Monitor's Report. Disclosure of the rest of the Report by DOJ would not provide any new information to VW.

The burden on the Government under Exemption 7(A) is to show that the disclosures "could reasonably be expected to interfere" with an investigation or prosecution. 5 U.S.C. §

19

552(b)(7)(A). The Government maintains that disclosure could cause interference by having a "chilling" effect on "the Monitor's ability to gather candid, accurate, and complete information from VW and its employees."[5] (Gov't Br. at 1, 10–11.) But, again, it is simply not plausible— given the strict candor and cooperation obligations imposed on VW under the Plea Agreement and the penalties for failure to abide by those obligations—that disclosure of the Report would undermine compliance with those obligations. The courts have repeatedly held that the harm alleged by the Government must be more than hypothetical. *See Scheer*, 35 F. Supp. 2d at 13–14; *ACLU Found. v. U.S. Dep't of Justice*, 833 F. Supp. 399, 407 (S.D.N.Y. 1993) (holding that the government must provide sufficient information to establish that disclosure would actually threaten ongoing enforcement proceedings and that hypothetical harm to closed investigations or to a "generalized class" of investigations was insufficient); *Assadi v. U.S. Citizenship & Immigration Servs.*, 2015 U.S. Dist. LEXIS 42544, at *13 (S.D.N.Y. Mar. 30, 2015) ("Conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases."); *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018) ("[C]onclusory and generalized allegations of exemptions" are insufficient.). Here, the Government's vague and speculative fears of a "chilling effect" fall far short of the proof of harm to a law enforcement proceeding required.

---

[5] According to Michael A. Sullivan, counsel to the Monitor, "the Monitor Team has informed [VW] personnel that the Plea Agreement provides that the Monitor's reports under the Plea Agreement are confidential." (Sullivan Decl. at ¶ 7, Dkt. 29). To the extent VW employees were not informed of the limited and conditional terms of the confidentiality protections under the Plea Agreement, that is the fault of VW and is not a basis for depriving Plaintiffs of their rights under FOIA.

## IV.   THE GOVERNMENT HAS NOT MET ITS ADDITIONAL BURDEN UNDER FOIA'S MOST RECENT AMENDMENT

An amendment to FOIA, enacted in 2016 (before The Times's Request was submitted), places an additional burden on the Government, to show that disclosure of the withheld material would reasonably harm the interests protected by the exemptions relied upon. The relevant text of FOIA now provides: "An agency shall . . . withhold information under this section only if [ ] (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) (quoting 5 U.S.C. § 552(a)(8)(A)). As this Court has recognized, the 2016 FOIA Improvement Act and its addition of the "foreseeable harm" standard imposes "an independent and meaningful burden on agencies" beyond the requirements to satisfy the pre-existing exemptions. *NRDC v. EPA*, 2019 U.S. Dist. LEXIS 124353, at *2 (S.D.N.Y. July 25, 2019).[6] To meet this "independent and meaningful burden," the agency must do more than "perfunctorily state that disclosure of all of the withheld information – regardless of category or substance – would jeopardize the free exchange of information." *Id.* at *1–2 (quoting *Rosenberg*, 342 F. Supp. 3d at 79); *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (holding "boiler plate" statements about the "chilling effect" that would result from disclosure insufficient).

As to Exemption 4, the 2016 amendment requires DOJ to show that some material harm to "an interest protected by" the confidential commercial information exemption is likely to result from disclosure of the Monitor's Report. *See* 5 U.S.C. § 552(a)(8)(A)(i). The "interest

---

[6] The 2016 FOIA Improvement Act codified a Justice Department policy known as the "foreseeable harm" standard, which the Department applied in determining whether to defend agency decisions to withhold information sought by FOIA requesters. *See Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72 (D.D.C. 2018).

protected" by Exemption 4 is the competitive position of the commercial entity. Thus, to justify withholding, DOJ and VW must demonstrate competitive harm to VW.[7] Neither VW nor the government even attempts to satisfy that standard, instead ignoring the 2016 amendments and, in VW's case, wrongly maintaining that "'substantial harm to the competitive position of the person from whom the information was obtained' is not required." VW Br. at 15. That simply is not so.[8]

The same "foreseeable harm" requirement applies to withholdings under Exemption 5. As several courts have recognized, pursuant to the 2016 amendment, even if a record or portion thereof otherwise falls within the scope of Exemption 5, the agency cannot withhold it absent specific, meaningful explanation of how disclosure "would harm the agency's deliberative process." *Rosenberg*, 342 F. Supp. 3d at 78; *see id.* at 79 (holding the agency's "perfunctor[y]" assertion that releasing the withheld material "would jeopardize the free exchange of information between senior leaders within and outside of the [agency]" insufficient to satisfy the foreseeable harm standard); *Judicial Watch*, 375 F. Supp. 3d at 100–01 (rejecting an agency's "general," "boiler plate," and "speculati[ve]" claims of foreseeable harm to deliberative process and explaining that "[t]he question is not whether disclosure could chill speech, but rather if it is

---

[7] The requirement to show "foreseeable harm" to VW's competitive position under the 2016 FOIA amendment is essentially the same as the "substantial competitive harm" requirement previously applied also to pre-2016 FOIA requests under *National Parks & Conservation Association v. Morton*, 498 F.2d 765, 770–71 (D.C. Cir. 1974). Recently, the Supreme Court in *Food Marketing Institute v. Argus Leader Media*—a case involving a pre-amendment FOIA request—abolished the *National Parks* competitive harm requirement for FOIA requests made *before* the effective date of the 2016 amendments. *See Argus Leader*, 139 S. Ct. at 2360. But FOIA requests like the one at issue here (made in 2018) are governed by the 2016 amendment's "foreseeable harm" standard, which—unlike the *National Parks* competitive harm requirement— is written into the statute, and which was not affected by *Argus Leader*.

[8] Presumably, the real harm VW is concerned with is the economic harm that may result from embarrassing disclosures. But reputational harm is not a cognizable competitive harm. *See Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1402 (7th Cir. 1984) ("[T]he competitive harm that attends any embarrassing disclosure is not the sort of thing that triggers exemption 4.").

reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld"); *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 2017 U.S. Dist. LEXIS 197451, at *16 (N.D. Cal. Nov. 30, 2017) (holding that the agency "fail[ed] to explain how disclosure would expose [its] decision-making process so as to discourage candid discussion" or to "provide any justification for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of 2016"). DOJ has made no meaningful showing of "foreseeable harm" here.

Similarly, withholding under Exemption 7(A) requires the agency to show that disclosure would foreseeably result in harm to the interests protected by the law enforcement exemption. As explained above, the government's asserted harm—"harm [to] the Monitor's ability to gather candid, accurate, and complete information from VW," which, in turn, would interfere with DOJ's ability to assess compliance, Gov't Br. at 1, 11—is not "reasonably foresee[able]" in light of VW's obligations of candor, under penalty of prosecution.

Second Circuit case law requires an agency to submit "reasonably detailed explanations of why material was withheld." *Halpern*, 181 F.3d at 295 (2d Cir. 1999). "Absent a sufficiently specific explanation" as to how disclosure "would result in reasonably foreseeable harm" to any interest protected by an exemption, the agency's motion for summary judgment should be denied. *Id.*; *Judicial Watch*, 375 F. Supp. 3d at 101.

## V.   AT A MININUM THIS COURT SHOULD CONDUCT AN *IN CAMERA* REVIEW

Under FOIA, "the agency must provide a detailed justification for its decision that non-exempt material is not segregable." *Conti v. U.S. Dep't of Homeland Sec.*, 2014 U.S. Dist. LEXIS 42544, at *72 (S.D.N.Y. Mar. 24, 2014). Blanket exemptions are disfavored, *see, e.g.*,

*Hopkins*, 929 F.2d at 85, and "conclusory statement[s] that 'there is no non-exempt information

that may be segregated and released' [are] insufficient to establish that [the records] do not

contain severable factual information," *Tarzia v. Clinton*, 2012 U.S. Dist. LEXIS 12971, at \*43

(S.D.N.Y. Jan. 30, 2012) (alterations omitted). Here, the Government has not provided any

information about the organization or components of the Monitor's Report, let alone a "detailed

justification" for withholding each portion of the Report.

Because the Government has failed to show that segregation is impossible, in the event

this Court concludes that any of the exemptions above does apply, The Times requests that the

Court exercise its discretion to conduct *in camera* review. *See* 5 U.S.C. § 552(a)(4)(B) (the court

"may examine the contents of . . . agency records in camera to determine whether such records or

any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this

section"); *Halpern*, 181 F.3d at 292 (concluding that *in camera* review was proper "where it

might be possible that the agency had exempted whole documents simply because there was

some exempt material in them"); *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d

345, 356 n.6 (E.D.N.Y. 2009) (conducting *in camera* review of documents partially withheld

under Exemption 5 given that the small number of documents made "the burden of *in

camera* review relatively light" and that "the dispute turn[ed] on the contents of the withheld

documents").

The Court's *in camera* review of the withholdings is particularly important here given the

immense public interest in Volkswagen's misconduct and the harm done to the public. The

emissions scandal epitomizes the need for public access to information that companies would

prefer to keep secret. Thanks to researchers, VW's "defeat device" software was discovered;

numerous state, federal, and foreign governments began investigating; and VW was ultimately

held to account for wide-reaching criminal conduct and unlawful concealment of that misconduct. The Monitor's Report is the product of that landmark criminal prosecution. In the context of this history of fraudulent deception and its impact on hundreds of thousands of Americans, transparency and public oversight are critical. Whether or not VW has, in fact, changed the corporate culture of deception that permitted the emissions scandal to occur, following the government's criminal prosecution, is a subject of significant public interest—and a subject as to which FOIA protects the public's right to be informed.

## CONCLUSION

For each and every one of the reasons set forth above, the Plaintiffs respectfully ask this Court to (i) grant The Times's cross-motion for summary judgment by directing the Department of Justice to make public within 20 days, pursuant to 5 U.S.C. § 552, the non-exempt portions of the requested records (or, in the alternative, order *in camera* review); (ii) award The Times the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (iii) grant such other and further relief as the Court deems just and proper.

Dated: New York, NY
      November 15, 2019

                    Respectfully submitted,

                    By: /s/ David E. McCraw
                    David E. McCraw
                    Alexandra Perloff-Giles
                    The New York Times Company
                    Legal Department
                    620 Eighth Avenue
                    New York, NY 10018
                    Phone: 212-556-4031
                    Facsimile: (212) 556-4634
                    Email: mccraw@nytimes.com

                    *Counsel for Plaintiffs*